## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AT ENGINE CONTROLS LTD., | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:10-CV-01539 (VLB) |
| v. | : | |
| | : | |
| GOODRICH PUMP & ENGINE CONTROL | : | |
| SYSTEMS, INC., | : | |
|     Defendant. | : | February 28, 2014 |

### RULING ADOPTING THE SPECIAL MASTER'S 4/24/13 RECOMMENDED RULING [Dkt. 134] AND DENYING PLAINTIFF'S MOTION TO AMEND/CORRECT THE SPECIAL MASTER'S RECOMMENDED RULING DENYING LEAVE TO AMEND COMPLAINT [Dkt. 142]

Plaintiff AT Engine Controls Ltd. ("ATEC") filed this action on September 28, 2010, and filed an Amended Complaint on November 5, 2010 as a matter of right. [Dkt. 12, Am. Compl.]. Defendant Goodrich Pump & Engine Control Systems, Inc. ("GPECS") filed an Answer and Counterclaim on January 7, 2011, and ATEC filed an Answer to the Counterclaim three years ago on February 28, 2011. [Dkts. 28, 39]. Fact discovery was set to be completed by September 23, 2013, the parties' dispositive motions are due March 11, 2014, and this case is set for jury selection on June 3, 2014 if no dispositive motions are filed. [Dkts. 161 & 176, Sched. Orders]. The parties, however, are in disagreement over whether the Plaintiff should be allowed to file a Second Amended Complaint and seek further discovery from the Defendant. The Court referred the matter to Special Master James Robertson and the parties submitted their respective positions regarding amendment of the complaint to the Special Master. [Dkt. no. 132]. The Special

1

Master denied ATEC's request to submit a Second Amended Complaint in a recommended ruling submitted to the Court.  [Dkt. no. 134].  ATEC has filed with the Court a motion to amend/correct the Special Master's proposed ruling, and has submitted the briefing it submitted to the Special master regarding amendment of the complaint; GPECS opposes both ATEC's attempts to amend and its attempt to reverse the Special Master's decision.  [Dkt. nos. 142, 155].  For the reasons enumerated in the Special Master's ruling and for the reasons that follow, the Court denies ATEC's motion to amend/correct the Amended Complaint.  In the interest of judicial economy, the Court also adopts in full the Special Master's proposed ruling, attached to this Ruling as Exhibit A for ease of reference.

ATEC's Proposed Second Amended Complaint seeks to amend the operative Amended Complaint in three ways to assert claims arising out of operative facts not the subject of the pending litigation.  Specifically, first it adds allegations relating to two electronic controllers which are not the subject of this litigation, the EMC-101 and EMC-102.  Second it seeks to add claims for breach of the Uniform Commercial Code.  Third, it proposes to add claims alleging that the Defendant breached a 1984 Agreement and purchase orders thereunder.[1]  ATEC contends that the current operative Amended Complaint "adequately states all causes of action contained in the Proposed Second Amended Complaint," which "merely refine[s] and amplif[ies] allegations already in the original and first

---

[1] The Court notes that since the filing of the Motion to Amend, defendant Goodrich Corporation has been dismissed from this case per stipulation of the parties.  Thus, any proposed amendments relating to claims asserted against Goodrich Corporation are moot.

amended complaints." [Dkt. 142-1, ATEC Memo. pp. 1-2]. ATEC also argues that it has acted expeditiously and contends that the proposed amendments will neither cause any delay in this case nor impose any prejudice on GPECS. [*Id.* at p.2]. GPECS opposes ATEC's request to amend the complaint, arguing that ATEC was not diligent in pursuing claims related to the EMC-101 or 102, the Uniform Commercial Code, and the 1984 Agreement, and that GPECS would be unduly prejudiced by the proposed amendments. [Dkt. 155, GPECS Opposition].

## LEGAL STANDARD

ATEC argues that the Special Master erred in applying the good cause standard pursuant to Federal Rule of Civil Procedure 16(b), governing modification of scheduling orders, in denying ATEC's motion to amend. Instead, ATEC contends that the Special Master should have applied the standard set forth in Rule 15(a)(2). GPECS asserts that ATEC has failed to meet the good cause standard, which applies to this case, because it has not acted diligently in asserting the new claims and theories it seeks to add and that the Amended Complaint cannot be amended without modifying the scheduling order. The Court finds that the Special Master did not err in applying the good cause standard in denying ATEC's motion to amend but that, even if this standard is improper, ATEC has not demonstrated its entitlement to amendment pursuant to the more liberal standard of Rule 15.

Federal Rule of Civil Procedure 15, which governs Amended and Supplemental Pleadings, provides that a party may amend a pleading at this point

**3**

in litigation "only with the opposing party's written consent or with the court's leave," which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  A court should deny leave to amend only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (same).

Federal Rule 16(b), in contrast, which governs scheduling orders issued by a court, provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The Second Circuit has held that

> despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause [pursuant to Rule 16(b)]. Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party.

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  *See also Gullo v. City of New York*, 12-4523-CV, 2013 WL 5433367 (2d Cir. Oct. 1, 2013) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced

against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'") (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)); *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) ("a party must show 'good cause' to amend his or her complaint if the motion is filed after the deadline imposed by the district court in its scheduling order").  Good cause exists where the moving party has demonstrated diligence and the amendment would not significantly prejudice the nonmoving party.  *Werking*, 526 F. App'x at 96.

Here, the Special Master appropriately applied the good cause standard of Rule 16.  In their initial Report of Rule 26(f) Planning Meeting, filed on January 21, 2011, the parties proposed that motions to amend be filed within sixty days, or by March 22, 2011.  [Dkt. 31, p. 14].  On May 23, 2011, the Court (Chatigny, J.) adopting the parties proposal, issued a Scheduling Order Regarding Case Management Plan directing the parties that "[a]ny motion to amend or join parties filed after these dates will be governed by the good cause standard of Fed. R. Civ. P. 16(b)."  [Dkt. 42, p. 1].  On September 21, 2011, the parties filed a Joint Status Report stating that "Pursuant to the Court's Scheduling Order Regarding Case Management Plan, any motion to amend or join parties will be governed by the good cause standard of Fed. R. Civ. P. 16(b)," and indicating that amendment was not likely.  [Dkt. 49, Joint Status Report of Counsel, p. 2].  Notably, the parties reiterated that the good cause standard would apply to any proposed amendment in three further Status Reports to the Court between January and September 2012, two of which were filed after the deadline to amend had passed and one of

which was filed after this case was transferred from Judge Chatigny's docket to this Court's docket.   [Dkt. 54, ATEC Status Report 1/17/12; dkt. 63, Joint Status Report 5/4/12; dkt. 100, Joint Status Report 9/12/12].

Notwithstanding the foregoing, on November 2, 2012, ATEC noted in a Notice filed with the Court that it would "seek[] to amend its complaint in order to clarify certain factual allegations," failing to note the standard to be applied.  [Dkt. 115, ATEC Notice re: Joint Status Report, 11/2/12].  On February 19, 2013, the parties submitted a Joint Status Report noting again that ATEC intended to file an amended complaint, and again failing to note the applicable standard governing such a motion.  [Dkt. 124, Joint Status Report 2/19/13].  The parties declined to offer a deadline for such amended pleadings in this Status Report.

The Court (Bryant, J.) entered a revised Scheduling Order on February 22, 2013, adopting the proposed scheduling order articulated in the Parties' February 19 Joint Status Report, and setting discovery and dispositive motion deadlines as well as jury selection dates, but not a deadline to amend the pleadings.  [Dkt. 128, Scheduling Order 2/22/13].  ATEC contends that because this Scheduling Order did not enumerate a deadline for amendment of the pleadings, the Court intended not to set any deadline for amending the pleadings and therefore its motion is not only not contrary to the deadlines imposed by a scheduling order, but also not subject to the good cause standard of Rule 16(b).  ATEC is incorrect in its assumptions and as a consequence its reasoning is faulty.

It is important to place this motion in context.  First, the Court's revised Scheduling Order includes a discovery deadline, a dispositive motion deadline and a trial date.  As a general matter of case management, it serves no purpose to issue a scheduling order which includes a discovery deadline, a dispositive motion deadline and a trial date if the pleadings are not closed.  Second, the Court's scheduling order makes no mention either directly of inferentially to reopening the pleadings which were closed at the time the operative scheduling order was issued.  Third, prior to the filing of the subject motion, the parties had conferred with the Court on which occasion the Court expressed concerns about the advanced age of the case and the lack of progress in completing the discovery process and clearly encouraged the parties to redouble their efforts to bring the case to resolution.  Furthermore, the deadline for amendment of the pleadings in this case had passed nearly two years before the entry of the Court's revised Scheduling Order, as the parties repeatedly noted in their joint status reports to the Court (Chatigny, J.).  The Court (Bryant, J.) thus had no reason to set a deadline for the parties to amend the Amended Complaint, as the parties had repeatedly and consistently noted that the deadline for amendment had passed and that any motion to amend would be filed pursuant to the good cause standard of Rule 16.  The absence of a deadline to amend in the revised Scheduling Order merely demonstrates that no such deadline could be imposed because the deadline had long since passed, a fact noted repeatedly by the parties.

The Special Master's application of the good cause standard was thus appropriate and this Court adopts his Recommended Ruling in full.  However, even if the Rule 16 good cause standard is inappropriate, ATEC has failed to demonstrate its entitlement to amendment pursuant to the more lenient standard articulated in Rule 15(a)(2), as the Court will discuss later in this Ruling.

## AMENDMENTS PERTAINING TO THE EMC-101 and 102

In support of its request to add claims as to the EMC-101 and EMC-102, ATEC first contends that the proposed allegations relating to these two devices are already encompassed in the operative First Amended Complaint's "general allegations concerning the 'ECU'/'Universal Governor' and the purported misappropriation of ATEC's proprietary technology;" thus discovery is within the scope of the operative complaint and no prejudice would result to the defendant by further amendment.  ATEC contends that the ECU or universal governor is a family of controllers of which the EMC-101 and 102 are parts.

Although ATEC contends that the proposed allegations relating to these two devices are already encompassed in the operative First Amended Complaint's general allegations, it admits that it only learned that the EMC-101 and 102 shared the same purportedly misappropriated technology as the ECU (EMC-100) in December 2012, more than two years after it filed its Amended Complaint on November 5, 2010.  GPECS contends that discovery as to these devices is outside the scope of the pleadings.

Countering ATEC's diligence, GPECS notes that ATEC's counsel questioned a GPECS witness about the relationship between the ECU and the EMC-101 and 102 on July 3, 2012, more than seven months prior to seeking to amend the operative Amended Complaint, and that documents provided by ATEC demonstrate that high-ranking ATEC executives have been aware of GPECS's universal control technology programs and the EMC-100, 101, and 102 since at least 2009.

GPECS further contends that amendment to include these two devices will require considerable discovery, will stymie the discovery schedule, and will significantly prejudice GPECS by delaying the resolution of this matter and forcing GPECS to expend considerable extra resources.  [Dkt. 155, GPECS Opposition, pp. 2-3].  GPECS also argues that the EMC-101 and 102 are irrelevant to this litigation as they are distinct from the EMC-100; they have "different specifications and design requirements than the EMC-100 and the DECU," are not drop-in replacements for the DECU, use different software from the EMC-100, which ATEC *does* allege is a drop-in replacement for the DECU, and do not compete with the DECU in the aircraft engine market.  [*Id.* at pp. 6-7].

The Special Master first concluded that these two new devices were not encompassed in the operative complaint.  In his proposed ruling, the Special Master held that while the allegations in the complaint did not "expressly exclude the EMC-101 or the EMC-102," ATEC "throughout the course of the litigation … has itself interpreted the phrase ECU as being the EMC-100," including in the parties' January 21, 2011 Report of Rule 26(f) Planning Meeting and its subpoena

to Honeywell International, Inc.  [*See* dkt. 134, Sp. Master's 4/24/13 Rec. Ruling].
The Special Master also noted that the allegations in the operative complaint tie
the disputed ECU to the Chinook helicopter, and that it is undisputed that neither
the EMC-101 or -102 is used in the Chinook, but rather are used in Turbomeca
engines and in Black Hawk helicopters, respectively.  Moreover, discovery thus
far – including document production and depositions – has focused on the EMC-
100.

     The Special Master then concluded that amendment is improper as to the
EMC-101 and 102 because ATEC has not demonstrated the requisite diligence in
asserting these allegations.  ATEC contends that it was not until the depositions
of GPECS employee Louis Panullo in December 2012 that it learned that the EMC-
101 and 102 had been developed using design elements of the EMC-100, which
ATEC alleges was designed using its proprietary technology.[2]  However, the
Special Master credited various GPECS exhibits demonstrating that GPECS had
publicly disclosed the existence of the EMC-101 and 102 since 2006 and that
ATEC executives were generally aware of these products in 2009.  Further,
GPECS presented and the Special Master credited the July 2012 deposition
testimony of a GPECS executive, Mr. Sisson, in which he testified to the existence
of the EMC-101 and 102 and the possible similarities to the EMC-100, five months
prior to the date at which ATEC claims to have discovered that the EMC-101 and
102 shared common architecture with the EMC-100.  The Special Master

---

[2] ATEC asserts that it then immediately requested production of documents as to
these two devices, which GPECS refused to produce, alleging that the devices
were outside the scope of the operative Amended Complaint.  [Dkt. 142-1, ATEC
Memo. p. 3].

ultimately concluded that "GPECS has established, and the plaintiff has not denied, that it was well aware of [the EMC-101 and 102] and their essential functionalities before this lawsuit was filed."  [Dkt. 134, Sp. Master's 4/24/13 Rec. Ruling, p. 10].

The Court agrees with the Special Master's conclusions and declines to allow ATEC to amend its complaint to include allegations as to the EMC-101 or 102.  In addition to the Special Master's conclusions, with which this Court concurs, the Court first finds that the bulk of the Amended Complaint does not contemplate GPECS' misappropriation and misuse of ATEC's confidential and proprietary information to develop competing *products, plural* such that it could encompass the EMC-101 or 102.  Paragraph 7 of the Amended Complaint, in the section entitled "Nature of the Action," expressly states that "[t]his action arises out of Goodrich and GPECS's misappropriation and misuse of AT Engine's confidential and proprietary information concerning its technology, which Goodrich and GPECS have used to develop a singular competing "*product"* that it sells as a direct replacement for the product developed, marketed and sold by AT Engine."  [Dkt. 12, Am. Compl. ¶7 (emphasis added)].  Paragraph 24 specifically limits the Plaintiff's claims to a particular apparatus, namely the "ECU," stating that "in essence, the ECU is a replica of the DECU containing near-identical elements designed as a full replacement of the DECU."  [*Id.* at ¶24].  Paragraph 23 lists components of the ECU in particular that "infringe upon AT Engine's proprietary rights."  [*Id.* at ¶24].  ATEC's second count, alleging breach of the implied covenant of good faith and fair dealing, also alleges wrongdoing by

way of a singular product: ATEC alleges that GPECS misappropriated ATEC's "proprietary data and technology to develop a competing *product*."  [*Id.* at 32]. The Amended Complaint is replete with references to the ECU in singular terms rather than in terms that would encompass the EMC-101 or 102.

Further, the Amended Complaint describes the ECU as follows:

> In 2001, the Army engaged Goodrich and/or GPECS to develop a Universal Governor ('ECU'), initially aimed at a platform which later became redundant.  The unit was then designated to be used on the next generation of Chinook helicopters, the CH-47F.  The Army has since announced plans to replace the entire CH-47D fleet with CH-47F helicopters that will include the new electronic control unit (the 'ECU') developed by Goodrich and/or GPECS.

[*Id.* at ¶21].  The Amended Complaint thus asserts that the allegedly infringing technology – the ECU – is specific to the Chinook helicopter program and not others.  Neither the EMC-101 nor 102 is used in the Chinook helicopter.

The Court is mindful that paragraph 47 of the Amended Complaint, part of ATEC's misappropriation of trade secrets claim, alleges that the Defendants "conspired to misappropriate AT Engine's trade secrets to their own use in order to develop, manufacture, produce and market competing products and services, including, but not limited to, the ECU."  [*Id.* at ¶47].  Similar language appears in paragraph 48.  This vague reference in light of the specific and limiting nomenclature of the Amended Complaint fails to meet the clear and concise pleading standard required by Rule 8 as enunciated in *Ashcroft v. Iqbal*.  *Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests' . . . [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations omitted).  Nor is a broad reading of those two paragraphs consistent with the Plaintiff's conduct in this case as noted by the Special Master and as noted by the Court below.  ATEC is thus not entitled to discovery regarding the EMC-101 or 102 based on the allegations of its Amended Complaint.  To rule otherwise would be inimical to judicial efficiency, would abrogate the Court's ability to manage its docket, would be contrary to the notion of finality, would nullify the Court's scheduling and related orders and would deprive the defendant if its right to know  of and defend against the claims leveled against it in an orderly and efficient manner.

Second, the Court finds that amendment of the operative complaint at this late juncture would appear to require voluminous discovery and would unduly delay the trial in this matter.  This case was filed on September 28, 2010 and proceeded before Judge Robert Chatigny for nearly two years, until September 11, 2012.  On June 21, 2011 the Court appointed a Special Master "responsible for the management of the languishing discovery process in this action."   [Dkt. 47, Stip. For Appt. of Sp. Master, p. 1].  All discovery in this case was originally to be

completed by December 14, 2012.  [Dkt. 42, Case Management Order].  After the case's transfer from Judge Chatigny, this Court set a revised discovery deadline of July 22, 2013, a date jointly requested by the parties.  [Dkt. 128, Scheduling Order, approving proposed dates enumerated in Dkt. No. 126, Joint Status Report].  The Court set a dispositive motion deadline of August 21, 2013, and a Jury Selection date – if dispositive motions were filed – of July 8, 2014.  [Dkt. 128, Scheduling Order].   On June 18, 2013, the Court set an Amended Scheduling Order, granting the parties' motion for extension of time and adopting the parties' revised proposed case management schedule.  The Court extended all of the deadlines, setting a discovery deadline of September 23, 2013, a dispositive motion deadline of February 10, 2014, and a Jury Selection date – if dispositive motions were filed – of June 3, 2014.  [Dkt. No. 161, Amended Scheduling Order, adopting Dkt. No. 156, dates proposed in Joint Motion for Extension of Time].  The parties then filed another joint motion to extend the deadlines set by the Court on January 16, 2014 in response to which the Court extended the dispositive motion deadlines, but not the trial deadline, shortening the time the Court had to rule on any dispositive motions.  [Dkt. Nos. 174, 176].  The trial date is June 6, 2014 if no dispositive motions are filed and February 3, 2015 if the parties file dispositive motions.  Nearly all of the motions to extend were based on the difficulty in obtaining discovery due to its nature and location.

This case has been pending for more than three years and four months and, if the parties decide to file dispositive motions, will not conclude until after the parties have litigated this matter for nearly four and a half years.  At this

14

juncture, discovery as to the ECU has concluded and dispositive motions are due imminently.

Discovery in this case has been voluminous and problematic, necessitating ATEC's acquisition of special licenses from the US Department of State, and the production of discovery documents dating back several decades. GPECS has produced approximately two million pages of documents to ATEC and has taken various depositions, and discovery thus far has focused on the EMC-100. GPECS has asserted that the "EMC-102 program alone is of comparable size to the EMC-100," which makes it "very likely that responding to ATEC's request for documents relating to the EMC-101 and 102 will require a production of comparable magnitude." [Dkt. 155, GPECS Opposition to ATEC's appeal, p. 26]. The Defendant is in the best position to evaluate the amount of additional discovery necessary were the Court to allow amendment of the Complaint to include the EMC-101 and 102. It is thus reasonable to conclude that expanding this lawsuit to include two additional allegedly infringing devices would result in the need to produce voluminous documents on top of the two million pages already produced, and for the need to take additional depositions. Further, amendment would necessitate additional expert disclosures and reports, and the parties would need to revise any damages analyses they have already prepared. As the Special Master concluded, "[i]f the plaintiff is entitled to comparable discovery pertaining to the EMC-101 and EMC-102, the defendant[] will have the burden of a comparable response." There is no doubt in the Court's mind that expanding this litigation to include two components over and above the ECU –

which has already consumed many months and two million pages of discovery –
would significantly delay the trial and conclusion of this matter and would cause
considerable prejudice to the Defendant at this late date.  *See Marsh v. Sheriff of
Cayuga Cnty.*, 36 F. App'x 10, 11 (2d Cir. 2002) (a defendant may suffer prejudice
where "the assertion of the new claim or defense would (i) require the opponent
to expend significant additional resources to conduct discovery and prepare for
trial; [or] (ii) significantly delay the resolution of the dispute."); *AEP Energy
Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("We
have referred to the prejudice to the opposing party resulting from a proposed
amendment as among the "most important" reasons to deny leave to amend").

ATEC further notes in its Reply to GPECS's Opposition to ATEC's motion
to amend that GPECS has already produced over 10,000 pages of documents
relating to the EMC-101 and 102, "likely due to the nature of the electronic
searches GPECS performed to gather the 2 million documents produced to ATEC
last year," and thus speculates that any further discovery would not prejudice
GPECS as further discovery would be limited.  [Dkt. No. 158, ATEC Reply, p. 3].
GPECS, however, has asserted that production as to these two devices would be
comparable to that for the ECU, which consisted of 2 million pages of documents.
The Court has no reason to believe this estimate is erroneous, especially given
that it was made after GPECS's production of the 10,000 pages of documents
relating to the EMC-101 and 102.

ATEC's request to amend the Amended Complaint to add allegations
relating to the EMC-101 and 102 is therefore DENIED pursuant to both Rules 15

and 16, as is its request to seek discovery as to these devices.  Nothing in this decision precludes the Plaintiff from bringing a separate action relating to these devices to the extent permitted by law, including any applicable statutes of limitation.

### Breach of the Uniform Commercial Code

ATEC also requested leave to amend the Amended Complaint to "more clearly delineate[] the contract claims arising under the U.C.C. and/or Connecticut's common law," contending in support that the operative Amended Complaint sufficiently states a cause of action for breach of contract under both the common law and the U.C.C., and that "[a]llowing amendment to delineate the two causes of action would aid the Court and the parties in efficiently preparing for and deciding dispositive motions, promote important objectives of providing greater clarity on the nature of ATEC's causes of action, and address any questions by GPECS about ATEC's claims."  [Dkt. 142-1, ATEC Memo. pp. 13-14]. ATEC further asserts that GPECS represents that it does not understand the nature of ATEC's allegations, and that ATEC anticipates that this Court will need to adjudicate in the future the issue of which body of law governs its contract claims; thus, ATEC should be allowed to plead in the alternative.  [*Id.* at p. 14].

GPECS counters that ATEC has demonstrated no good cause for asserting new causes of action pursuant to the U.C.C. more than two years after this action was filed based on documents, information and statutes available since the inception of this litigation.

The Special Master concluded that, pursuant to the good cause standard of Rule 16(b), ATEC had not met its burden of establishing good cause for the delay in amending its claims as ATEC had been aware since at least 2010 of the conduct giving rise to the contract claims in the original pleading, which is the same conduct giving rise to the U.C.C. claims in the proposed Second Amended Complaint.  [Dkt. 134, Sp. Master's 4/24/13 Rec. Ruling, p. 14].  The Court agrees. ATEC has failed to demonstrate good cause for amendment to add two claims that do not appear in the operative Amended Complaint, but are based on the same nucleus of operative facts asserted at this action's filing in 2010.  Contrary to ATEC's contention, the operative Amended Complaint contains only a common law breach of contract claim, not a Connecticut statutory claim; nowhere does the Amended Complaint mention a statutory breach.  ATEC has not demonstrated that it has acted diligently in bringing these U.C.C. claims.  *See Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (plaintiff failed to demonstrate good cause to amend where he waited 8 months after deadline to amend, and where he inexplicably waited two months to file motion after having notice of the relevant facts supporting his claims).

In addition, even applying the more liberal pleading standard of Fed. R. Civ. P. 15(a)(2), ATEC's amendment is futile as ATEC's proposed U.C.C. claims lack the particularity required pursuant to the pleading standard enumerated in *Twombley* and *Iqbal*, supra.  Connecticut's Uniform Commercial Code, Conn. Gen. Stat. §42a-1-101, et seq., contains twelve separate Articles.  ATEC has failed to enumerate in its proposed Second Amended Complaint which Article and/or

section GPECS has allegedly violated, instead stating only that "[t]o the extent Connecticut's Uniform Commercial Code …, rather than Connecticut's common law, governs the [Marketing Agreement or 1984 Agreement], AT Engine pleads this alternative count …" for breach of the U.C.C.  [Dkt. 142-2, proposed 2d Amended Compl. counts 2, 4].  These unspecified U.C.C. violations fail to give GPECS (or the Court, for that matter) notice of the nature of ATEC's claims of contractual breach and would not survive a Rule 12(b)(6) motion for dismissal for failure to state a claim, as the Court cannot discern from the amendments the legal claim ATEC purports to be clarifying.  Therefore, ATEC's request to amend the Amended Complaint to add two U.C.C. claims is DENIED.

**Breach of 1984 Agreement**

Finally, ATEC requested leave to amend the Amended Complaint to "further delineate[] its contract claims arising under the Marketing Agreement, the 1984 Agreement, and related purchase orders."  [Dkt. 142-1, ATEC Memo. p. 14].  In support, ATEC notes that the 1979 Marketing Agreement "specifically contemplates the 1984 Agreement and related purchase orders, which themselves incorporate the mutual promise of the Marketing Agreement," and that the 1984 Agreement "was Exhibit 3 to each and every deposition of ATEC's witnesses taken by GPECS, undermining any claim of prejudice or surprise." [*Id.*].

As with ATEC's proposed U.C.C. claims, GPECS contends that ATEC has demonstrated no good cause for asserting new causes of action based on a 1984

Agreement more than two years after this action was filed based on documents, information and statutes available since the inception of this litigation.  The parties have been aware of the 1984 Agreement since 1984, and ATEC's counsel has been aware of this agreement since GPECS and Goodrich Corporation filed their respective Answers to the Amended Complaint on January 7, 2011 and December 28, 2010, both referencing the 1984 Agreement in their special defenses.  [Dkt. 155, GPECS Opposition, p. 23].

The Special Master concluded that ATEC had obviously been aware of the 1984 Agreement "for several years," and it was equally obvious that ATEC had been aware of the conduct giving rise to the breach of contract claims in the operative Amended Complaint – the same conduct giving rise to the alleged breach of the 1984 Agreement – for several years as well.  The Special Master thus concluded that ATEC had not met its burden of establishing good cause for the delay in amending its claims.  [Dkt. 134, Sp. Master's 4/24/13 Rec. Ruling, p. 14].

The Court agrees.  Functionally, the Court notes that the proposed amendment equates to ATEC's addition of new factual content and three new claims relating to a 1984 Agreement not mentioned at all in the operative Amended Complaint.  Although ATEC contends that its proposed amendment "merely seeks to allege with greater specificity the 1984 Agreement and related purchase orders," ATEC fails to acknowledge that the operative Amended Complaint does not contain any mention of a 1984 Agreement.  Nor does ATEC elaborate on how the Marketing Agreement "specifically contemplates the 1984

**20**

Agreement and related purchase orders, which themselves incorporate the mutual promise of the Marketing Agreement," and the docket does not contain a copy of the 1984 Agreement such that this Court may determine whether it "incorporate[s] the mutual promise of the [1979] Marketing Agreement."  ATEC's allegations concerning the 1984 Agreement are thus entirely new to this action.

ATEC has also failed to explain why it did not expeditiously move to amend its operative Amended Complaint after it was privy to GPECS's Answer, filed on January 7, 2011, and to Goodrich's Answer, filed December 28, 2010, and which both specifically included the 1984 Agreement in their special defenses. GPECS's tenth defense states that "[t]he 1979 Agreement is novated by the Program Agreement between Chandler Evans and HSDE dated October 25, 1984," and Goodrich's tenth defense is identical.  [Dkt. 28, GPECS Answer and Aff. Defenses to Am. Compl.; Dkt. 27, Goodrich's Answer and Aff. Defenses to Am. Compl.].  At the very least, ATEC was or should have been aware of the 1984 Agreement in December 2010 or January 2011 upon the filing of GPECS's and Goodrich's Answers.  ATEC has failed to demonstrate good cause for waiting until March 2013, more than two years after GPECS and Goodrich filed their Answers, to seek amendment.[3]  Additionally, GPECS represents that it produced the 1984 Agreement in discovery and both ATEC and GPECS agree that the 1984 Agreement was marked as an exhibit to the depositions of ATEC witnesses in October 2012.  ATEC has demonstrated no good cause for why it waited six months after specifically discussing the 1984 Agreement in various depositions

---

[3] GPECS points out, and the Court notes, that the 1984 Agreement has been or should have been known to the parties since 1984.

of ATEC officials to move to amend.  To conclude, ATEC's proposed amendments relating to the 1984 Agreement assert entirely new facts and causes of action based on documents known to the parties for more than two years.  ATEC has offered no good cause for amendment at this late juncture, and has not demonstrated that it acted diligently in pursuing these claims which substantively alter the allegations of the complaint.

The Court further concludes that, even if the good cause standard is improper, ATEC has failed to meet its burden pursuant to Fed. R. Civ. P. 15(a)(2).  As discussed previously, ATEC has unduly delayed amendment of its operative Amended Complaint to include allegations relating to the 1984 Amendment.  This case was filed on September 28, 2010, and the existence of the 1984 Agreement became part of the record in this case in December 2010.  Discovery closed in September and dispositive motions are due imminently.  ATEC has posited no reason for waiting more than two years to attempt to amend its complaint to include these additional facts and legal claims.  Furthermore, as noted, discovery in this matter has been voluminous.  ATEC has not represented whether further discovery would be necessary as to the 1984 Agreement, nor does ATEC posit what the scope of such discovery might be.  GPECS has produced approximately 2 million pages of documents in this case thus far and the parties have conducted numerous depositions, both in this country and abroad.  Adding claims as to the 1984 Agreement could expand the scope of discovery, thus unduly delaying trial in this matter.

<u>Conclusion</u>

For the foregoing reasons, the Court DENIES the Plaintiff's appeal of the Special Master's [134] Recommended Ruling denying the Plaintiff's request to amend its complaint, and the Court ADOPTS in full the Special Master's [134] Recommended Ruling.  The Court DENIES Plaintiff's request to amend the operative Amended Complaint.[4]

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: February 28, 2014

---

[4] The Court notes that ATEC has proposed to amend its complaint to add a count of tortious interference and to delete the breach of contract claims against Goodrich Corporation.  It is unnecessary to address these proposed amendments as Goodrich Corporation is no longer a defendant in this action.